UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**ORIGINAL**

| | | |
|---|---|---|
| SHARI AND MARK CHASE | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.:    **WMN-01-3169** |
| | ) | |
| THE SCOTTS COMPANY | ) | |
| | ) | |
| Defendant | ) | |

## PRETRIAL ORDER

A.    Statement of Facts in Support of Plaintiffs' Claims.

The Plaintiffs, Shari and Mark Chase, propose to prove the following facts. Plaintiffs are

husband and wife, with two small sons, who in 1998 lived at 13919 Shannon Avenue, Laurel,

Maryland. In the Fall of 1997 and the Spring of 1998, Mark Chase purchased a lawn care

product called Patchmaster, manufactured by the Defendant, which was designed for use in areas

of a yard where it was difficult to grow grass. Bags of the product were purchased in a sealed

and undamaged condition from a local Hechinger's store, and had been sold by Scotts to

Hechinger without evidence of any alteration in the condition of the product between the time

that it left Scotts' hands and when it reached the consumer. Patchmaster consists of mulch,

fertilizer, and a surfactant, and is not supposed to contain any more than background levels of

arsenic, a toxic heavy metal.

In the Fall of 1997 and Spring of 1998 both Mark Chase and Shari Chase applied

Patchmaster on multiple occasions, by hand, as instructed by the label on the product, which

contained no warnings about arsenic or other poisons. Beginning in approximately May of 1998,

Shari Chase developed a variety of medical conditions, including gastrointestinal problems, skin

lesions, and severe neurological problems. Other members of the family also had gastrointestinal symptoms to varying degrees. Shari Chase underwent a variety of medical tests and treatments as doctors struggled to diagnose the cause of her illness.

In October of 1998 Shari Chase suffered a seizure, and was hospitalized at Laurel Regional Hospital. She was then transferred to Johns Hopkins Hospital, where in an effort to diagnose the cause of her multiple problems doctors finally did screening tests for heavy metals that showed very high levels of arsenic. Following her release from the hospital, the Prince George's Health Department investigated this arsenic poisoning, and did screening tests on the rest of the family, which showed elevated arsenic levels in Mark Chase and one potential elevated level in Alexander Chase. The Health Department tested a variety of products in the Chase home, including their water, and was unable to identify a source of this arsenic exposure. The Health Department did only composite soil testing, and did not identify a specific source of arsenic.

Testing was then done on the Chase property by Travelers Loss Prevention and Engineering, which showed a specific area in the Chase yard, which revealed a highly elevated arsenic level. Shari Chase, as a result of this and further testing reported to Scotts that arsenic was present in areas where Patchmaster had been used in their yard, whereupon Scotts' agent hired DataNet to do soil testing in the Chases' yard. DataNet's engineer tested areas where he could see residue of mulch consistent with Patchmaster, and which was included in the sampling. A number of these areas in the Chases' yard showed extremely elevated arsenic levels. Although the Chases' backyard deck was made of pressure treated wood, the areas of extremely elevated arsenic were not under the deck area, but in areas where Patchmaster had been specifically applied.

Shari Chase's acute symptoms from her arsenic poisoning left her with a very severe and debilitating illness which left her near death, and she was hospitalized for several weeks. Once the arsenic poisoning diagnosis was reached, she was treated for chronic arsenic poisoning, and her arsenic levels gradually subsided as her symptoms improved. Arsenic is a known carcinogen, and she has been followed by physicians, including an oncologist, Dr. Clement Knight, who continues to screen her periodically for cancer. Shari Chase has residual symptoms from her arsenic poisoning, including neurological symptoms, and continues to be treated by Dr. Warren Ross for the residuals of her arsenic poisoning. Medical expenses incurred for diagnosis and treatment of the arsenic poisoning, hospitalization, medication, and other treatment for the more acute phase of her illness were approximately $70,000, and the Plaintiff is incurring ongoing costs for treatment with Dr. Ross and Dr. Knight.

As a result of Shari Chase's illness and symptoms, there was a tremendous strain on the Chases' home and family life. Although the medical evidence shows that Mark Chase was exposed to arsenic, there is no claim now being made for any medical symptoms personally experienced by him. The Plaintiffs do claim loss of consortium, including damage to the marriage relationship and the emotional effects of Mrs. Chase's devastating illness.

The Plaintiffs will produce expert testimony regarding arsenic, its toxic effects, and that the routes of exposure to arsenic include inhalation, dermal exposure and ingestion. Toxicologist, Nicholas Lappas, Ph.D. will explain the effects of arsenic, and the laboratory testing data showing Shari Chase's arsenic exposure. The evidence will be that the current medical literature suggests that while most arsenic leaves the body relatively quickly, particularly in cases of chronic arsenic exposure there is a body burden of arsenic that can linger for much longer periods and is quite variable on an individual basis.

3

The Plaintiffs will call Dr. John Adams, a Forensic Pathologist, who will testify that the source of Shari Chase's arsenic poisoning was the Scotts' Patchmaster product through all three routes of exposure. He will testify regarding her symptoms that were caused by this arsenic poisoning, the health effects on Mrs. Chase, and the treatment that was directed to diagnosing and addressing these symptoms in the various body systems.

The Plaintiffs will also call Richard Albright, an Environmental Specialist with the District of Columbia Government with substantial experience in arsenic in soils. He is expected to testify that the most likely source of the arsenic in the Patchmaster was tainted fertilizer in the product. The evidence will be that Scotts did no testing on the Patchmaster product for arsenic until after the Chases' exposure and then only because the State of Washington required it. Scotts has a log of consumer complaints that predate Shari Chase's illness, related to exposure to Patchmaster in pets and humans, but no testing of arsenic was done on the product as a result of any such complaints before the Plaintiffs' exposure.

The legal theories upon which the Plaintiffs will proceed, in this case based on diversity jurisdiction under Maryland law, are as follows:

1.      Strict products liability;

2.      Negligent manufacture, and failure to test the product;

3.      Breach of implied warranty of merchantability;

4.      Unfair and deceptive trade practices in labeling of the product, under the Maryland Commercial Law Article, Article § 13- 408(b);

5.      As a result of these theories, claims for personal injury to Shari Chase and loss of consortium to Shari and Mark Chase.

B.    **Statement of Facts in Support of Defendant's Defenses.**

Mark and Shari Chase purchased their home on Shannon Avenue in 1987 as a new home. Several years after moving in, Mark constructed a deck at the rear of the home. The deck was constructed with pressure treated wood that Mark cut on site. He knew that the wood contained arsenic. Plaintiffs' expert Richard Albright confirmed that the wood most likely had been treated with chromated copper arsenate ("CCA") and that a side yard fence also appeared to have been treated with CCA. The back yard was enclosed with a wood fence, some portion of which Albright testified might have been CCA treated wood.

There were also break-ins in the neighborhood. Automobiles owned by the Chases and parked at the house were vandalized on two occasions.

Patchmaster is a lawn repair product. It is comprised of 70% mulch (paper), approximately 20% fertilizer, 10% seed, and small amounts of green dye and surfactant, a wetting agent. The fertilizer component is made up of nitrogen, monoammonium phosphate, and potash, and can be applied with bare hands.

Patchmaster was manufactured on behalf of Scotts by U.S. GreenFiber, L.L.C., in Elkton, Virginia. No other lawn care products are made at that facility. No products containing arsenic are maintained at the plant. There has been very little sickness among plant employees and no mysterious or unexplained health issues.

GreenFiber ships Patchmaster to Scotts warehouses after producing and packaging the material. The product is then shipped to retailers, such as Hechinger's, where it passes out of Scotts' control. Plaintiffs did not keep any of the product or its packaging and do not have a copy of the sales receipt. It is also impossible to determine how long the bags in question were

out of Scotts' possession and under the control of the Hechinger's store from which the plaintiffs claim to have purchased Patchmaster.

Arsenic is not an intended ingredient in Patchmaster. But arsenic is an element that is present naturally in the earth's crust. Trace amounts can be found in fertilizer products. Scotts tests all its fertilizers and products containing fertilizer for the presence of heavy metals and reports the results to the State of Washington. The results are available to the public through a web site, www.wa.gov/agr/. These tests indicate that arsenic is present in Patchmaster at levels below 2 ppm.[1] Plaintiffs' expert John Adams acknowledges that this level of arsenic in Patchmaster would not be associated with adverse health consequences. The highest level of arsenic reported in any Patchmaster product is 1.82 ppm.

After the plaintiffs filed this lawsuit, Scotts ordered arsenic testing of 49 of 89 samples of Patchmaster that had been retained by GreenFiber. Although these samples had not been maintained systematically for analysis purposes, they did come from the period when the Patchmaster allegedly purchased by Mark Chase likely would have been manufactured. Those results again reflect arsenic levels in Patchmaster less than 2 ppm. Based on all the testing data that Scotts has regarding arsenic in Patchmaster, it is physically and chemically impossible that Patchmaster was the source of Shari Chase's arsenic exposure. No known valid testing of Patchmaster has ever shown levels of arsenic greater than trace amounts. In the decade since Patchmaster's inception, Scotts has never received one complaint of arsenic in the product.

IMC Global, Inc. ("IMC") almost certainly was the supplier of the monoammonium phosphate ("MAP") used in the fertilizer component of the Patchmaster allegedly purchased by the plaintiffs. Because phosphoric acid is also used as a food additive in animal feed, IMC

---

[1] Earlier testing by Scotts had indicated the presence of arsenic at levels between 9 and 29 ppm. Scotts later determined that the analytical methodology used in these tests to measure arsenic gave falsely high results.

observes a strict policy of testing it for arsenic as well as other heavy metals. That testing has never revealed elevated levels of arsenic. Analysis of MAP conducted monthly from 1995 to 2000 shows consistent arsenic levels between 10 and 12 ppm.[2] Increased levels of arsenic have not been found in the Florida mines from which IMC obtains its phosphate. Published literature demonstrates that elevated levels of arsenic have not been reported in any Florida phosphate.

Shari Chase's exposure to arsenic was discovered during a heavy metals screen conducted while she was hospitalized at Johns Hopkins. Her urine thereafter was tested on numerous occasions. Arsenic clears from the body very quickly, with over 90% of an ingested dose of inorganic arsenic excreted in the urine within six days. Chase's total urinary arsenic, however, remained above 50 ug/L, the upper range of normal reported by most of the labs, during her hospitalization in early November 1998, after her return home to Shannon Avenue, and after she and her family moved out of their home and into a hotel on December 12, 1998. An elevated level of 171 ug/L (total arsenic) was measured in November 2000, nearly 1 ½ years after the Chases had sold their Shannon Avenue home and moved out. This and other data is consistent with continuing exposure to arsenic and inconsistent with exposure to arsenic in Chase's lawn.

After Shari Chase's release from the hospital in November 1998, officials from the Prince George's County Health Department ("PGCHD") and Maryland Department of Health and Mental Hygiene began an investigation of the plaintiffs and their home to determine the source of her arsenic exposure. As a result of the investigation, Arthur Thacher, Health Officer for PGCHD, wrote a letter to Shari Chase that stated that, "based on all of the medical and scientific evidence we have gathered to date, we conclude that the source of your arsenic

---

[2] Arsenic levels in Patchmaster are less than what is in the MAP because fertilizer comprises only about 20% of Patchmaster and MAP is only one ingredient in the fertilizer.

exposure *is not environmental* and the most likely route of exposure *is by ingestion.*" Thacher further stated in his letter that, "[w]hile the exact source of arsenic is unknown, your home environment (water, soil, dust) evidently is not the source of your elevated arsenic levels." The investigation ruled out an environmental source as the cause of the Chase's arsenic exposure. There were three primary factors that led to this conclusion:

1.    Shari Chase could not have gotten a significant dose of arsenic via absorption through the skin or from inhalation.

2.    Ingestion of arsenic-containing material in the soil was not a credible explanation because of the amount of dirt that Shari Chase would had to have eaten in order to have obtained the urinary arsenic levels that she did.

3.    Chase continued to experience elevated levels of arsenic while in the hospital and after returning home, which indicated a continuing source of exposure that was inconsistent with anything in the yard being a source.

Sometime in December of 1998, Shari Chase contacted the Travelers Insurance Company, which sent representatives to the plaintiffs' home to perform additional testing. Travelers took one soil sample from the back yard. It thereafter divided this sample between soil and what was described as an "unknown" substance, specifically, "green chunks of fibrous material." The unknown substance was determined to be 95% cellulose. Among other things, it was reported to contain 430 ppm arsenic[3], 640 ppm zinc, and 440 ppm lead. According to Bill Evans, Senior Research Scientist at Scotts, Patchmaster contains neither zinc nor lead. In addition, although there were higher levels of lead than arsenic in this sample, Shari Chase had no evidence of lead poisoning.

Additional sampling was conducted in the yard of the Chase residence in 1999. That sampling revealed:

•    elevated levels of arsenic in some areas where Patchmaster had been used

---

[3] The result for arsenic is of questionable validity because the analytical method used for the analysis is known to give falsely high results.

- no elevated levels of arsenic in other areas where Patchmaster had been used

- elevated levels of arsenic in areas where Patchmaster had not been used

Although the yard sampling revealed some areas of elevated arsenic, the levels of arsenic posed no realistic threat to human health. Levels of arsenic in soil similar to what was found at the Chase residence have been detected in other settings. Scientific studies of people who reside in such settings have shown no incidence of arsenic poisoning.

Shari Chase had high levels of arsenic detected in her hair and in her urine. It is biologically impossible for the arsenic in her body to have come from the arsenic detected in the yard. The opinion of plaintiff's expert to the contrary is implausible and not based on sound scientific principles and methods. Chase's arsenic poisoning almost certainly came from something unidentified that she ate or drank, either accidentally or deliberately. It had nothing to do with Scotts Patchmaster.

Shari Chase's claim for damages is excessive and unjustified. Items she claims as special damages are not related to her exposure to arsenic.

### C.    Other Claims.

None.

### D.    Amendments to Pleadings.

None.

### E.    Issues and Pleadings to be Abandoned.

None.

F.    **Stipulation and Proposed Stipulations**

1.    **Stipulation**

Without in any way waiving objections as to relevance, the parties hereby stipulate and agree as follows:

a.    The documents listed on Plaintiffs' Exhibit List and on Defendant's Exhibit List are authentic copies of the original documents and that they are what they purport on their face to be.

b.    As to those documents listed on Plaintiff's Exhibit List and Defendant's Exhibit List that are medical records, records of public agencies or records reflecting the results of the analyses of biological, environmental or product samples, the parties stipulate and agree that such documents qualify as records of regularly conducted activity within the meaning of Rule 803(6), Federal Rules of Evidence.

2.    **Plaintiff Proposed Stipulation**

(Per the Request for Admissions of Fact).

H.    **Damages Claimed.**

1.    Past Medical Expenses –
through August, 2002                    $ 70,790.05

2.    Ongoing Medical Expenses –
next one to two years                  $   4,543.00  (per year)

3.    Household items which had to be
discarded                              $  3,212.32

4.    Living expenses - (hotel and related
expenses due to relocation to
temporary living quarters)             $ 16,021.70

| | | | |
|---|---|---|---|
| 5. | Cleanup of arsenic exposure to sell house | $ | 8,321.05 |
| 6. | Renovations to new house to accommodate Plaintiff's illness | $ | 26,467.16 |
| 7. | Future medical expenses – Dr. Knight, laboratory work, chest x-ray | $ | 579.00 (per year) |
| 8. | Body Scan | $ | 800.00 (per year) |

**I.    Exhibits Lists.**

See attached.

**J.    Witness List.**

A.    Plaintiffs' Expect to Present the Following Witnesses.

1.    Shari Chase;

2.    Mark Chase;

3.    W. Warren Wright, III,
6334 Dogwood Road
Baltimore, Maryland 21207;

4.    John E. Adams, M.D.
827 West Padonia Road
Cockeysville, Maryland 21030;

5.    Nicholas Lappas, Ph.D.
Department of Forensic Sciences
The George Washington University
Washington, D.C. 20052;

6.    Richard D. Albright
61 Prospect Bay Drive
Grasonville, Maryland 21638;

7.    Clement Knight, M.D.
11065 Little Patuxent Parkway
Columbia, Maryland 21044
(By Videotape);

8.    Barry Lance, M.D.
      14201 Laurel Park Drive
      Suite 214
      Laurel, Maryland 20707
      (By Videotape or live);

9.    Warren Ross, M.D.
      Crossroads Medical Associates
      4801 Dorsey Hall Drive
      Suite 201
      Ellicott City, Maryland 21042
      (By Videotape);

10.   Rose Bartosevich
      139167 Shannon Avenue
      Laurel, Maryland

11.   Roxanne Gordon
      10239 Shirley Meadow Court
      Ellicott City, Maryland.

The Plaintiffs may call the following witnesses, if the need arises:

1.    Debbie Frew
      14331 Oxford Drive
      Laurel, Maryland;

2.    Judy Sturm
      2705 Cooper Creek Road
      Oakton, Virginia 20171;

3.    Janice Tweety
      21207 Sparrow Court
      Germantown, Maryland;

4.    Tim Morris
      Williamsburg Homes
      P.O. Box 1018
      Columbia, Maryland 21044;

5.    Fran Berk
      3945 Connecticut Avenue, N.W.
      Washington, D.C. 20008;

6.      Joyce Glidden
        6346 Ducketts Lane
        Elkridge, Maryland;

7.      Mark Wells, D.C.
        11615 Beltsville Drive
        Beltsville, Maryland;

8.      Erik Karlson
        Service Master
        P.O. Box 256
        Garrett Park, Maryland 20896;

9.      Ernest T. Rodez
        The Fine Carpentry, Inc.
        10840 Guilford Road
        Suite 403
        Annapolis Junction, Maryland 20705

10.     Arthur Thacher
        Prince George's County Health Department

11.     Page Timberlake
        Greenfiber

12.     Any witness on Defendant's witness list.

B.    Defendants expect to call the following witnesses:

1.      Bill Evans
        Senior Research Scientist
        The Scotts Company
        14111 Scottslawn Road
        Marysville, OH  43041

2.      Bob Roser
        Director of Analytical Laboratory
        The Scotts Company
        14111 Scottslawn Road
        Marysville, OH  43041

3.      Jerry Boroff
        Director of Seed Operations
        The Scotts Company
        14111 Scottslawn Road
        Marysville, OH  43041

4.    Jeff Knape
      Senior Buyer
      The Scotts Company
      14111 Scottslawn Road
      Marysville, OH  43041

5.    Joseph Gliksman
      Manager of Continuous Improvement
      IMC Phosphates
      3095 CR 640
      Mulberry, FL  33860

6.    Page Timberlake
      Plant Manager
      U.S. GreenFiber, LLC
      21465 Airpark Drive
      P.O. Box 38
      Elkwood, VA  22718

7.    Ed Billmaier
      Director of Customer Relations
      The Scotts Company
      14111 Scottslawn Road
      Marysville, OH  43041

8.    Dr. Alphonse Poklis
      Department of Pathology
      Medical College of Virginia
      Box 98-0165
      Richmond, VA 23298

9.    Dr. Glen Millner
      Vice-President and Senior Toxicologist
      Center for Toxicology and Environmental Health (CTEH) L.L.C.
      615 West Markham Street
      Little Rock, AR  72201

10.   Dr. Michael Greenberg
      110 West Lancaster Avenue
      Wayne, PA  19087

11.   Arthur Thacher
      Prince George's County Health Dept.
      1701 McCormick Drive
      Largo, MD  20774-5310

Defendants may call the following witnesses:

1.  Craig D. Queen
    Peregrine, Stime, Newman, Ritzman & Bruckner, Ltd.
    221 East Illinois Street, P.O. Box 564
    Wheaton, IL 60189-0564

2.  Doug Prehm
    Director of Customer Service Account Teams
    The Scotts Company
    14111 Scottslawn Road
    Marysville, OH 43041

3.  Detective Sgt. Richard Speake
    Laurel Maryland Police Dept.
    350 Municipal Square
    Laurel, MD 20707-4150

4.  Mercedes Lawrence
    Prince George's County Health Dept.
    Division of Epidemiology and Disease Control
    1701 McCormick Drive
    Suite 240
    Largo. MD 20774-5310

5.  Any witness named on Plaintiffs' witness list.

## K.    Depositions.

Exclusive for impeachment purposes, the Plaintiffs may offer the following deposition testimony:

1.  William Evans

    page  4, line 16 – page  5, line  8;
    page 10, line 15 – page 11, line 23;
    page 12, line 20 – page 13, line 19;
    page 18, line 23 – page 19, line 17;

2.  Robert Roser

    page  4, line  7 – line 13;
    page 19, line  8 – page 20, line 21;
    page 24, lines 3 – 19;

3.    Edward Billmaier

> page 4, line 11 – page 5, line 4;
> page 50, line 23 – page 52, line 4;
> page 53, line 2;
> page 54, line 7 – page 55, line 13;
> page 56, line 18 – line 22.

Defendant's Counter-Designation Pursuant to F.R.C.P. 32(a)(4):

> page 31, line 8 - line 19
> page 53, line 19 - line 22
> page 57, line 18 - line 22

4.    Page Timberlake

> page 10, line 24 – page 12, line 4
> page 13, line 3-22
> page 16, lines 15-18
> page 25, lines 7-11
> page 27, lines 6-13
> page 29, line 20 – page 34, line 22

Defendant's Counter-Designation Pursuant to F.R.C.P. 32(a)(4):

> page 44, line 15 - line 24

The Defendant may offer the following deposition testimony:

1.    Craig Queen

> page 10, line 3 - line 6
> page 10, line 14 - line 22
> page 11, line 6 - line 13
> page 49, line 10 - p. 51, line 1
> page 51, line 6-8, 10 - p. 53, line 1-9, 11
> page 53, line 12 - p. 54, line 1-3, 5
> page 54, line 9 - line 18
> page 21, line 24 - p. 23, line 1
> page 55, line 14 - p. 56, line 1
> page 57, line 3 - p. 58, line 1

Plaintiffs' Counter-Designation Pursuant to F.R.C.P. 32(a)(4):
> page 7, line 7 – page 8, line 5
> page 10, line 23 – page 11, line 5
> page 58, line 23 – page 59, line 7

2.      Robert Ehlenberger

      page 5, line 10 - p. 6, line 21
      page 11, line 11 - line 18
      page 12, line 5 - line 24
      page 13, line 4 - line 7
      page 13, line 18 - p. 15, line 14
      page 16, line 6 - line 10
      page 23, line 23 - p. 25, line 4
      page 26, line 3 - line 10
      page 30, line 21 - p. 32, line 9
      page 33, line 24 - p. 34, line 20
      page 36, line 1 - line 6
      page 37, line 5 - p. 38, line 4
      page 39, line 9 - p. 40, line 23
      page 42, line 9- line 15
      page 43, line 17 - line 22

Plaintiffs' Counter-Designation Pursuant to F.R.C.P. 32(a)(4):

      page 13, lines 8-17
      page 16, line 21 – page 18, line 3
      page 29, line 7 – page 30, line 20
      page 34, line 21 – page 35, line 10
      page 42, line 16 – page 43, line 16

**L.**     **Other Pretrial Relief.**

As of the date of the preparation of this Proposed Pretrial order, there is pending before

the Court Plaintiffs' motion to compel with respect to Defendant's responses to request for

admissions.

**M.**     **Other Matters.**

The Plaintiffs request the right to file a Motion in Limine regarding evidentiary issues if

necessary. Defendant intends to file a Motion in Limine to Exclude Certain Evidence.

Respectfully submitted,

THALER LIEBELER LLP

Lars H. Liebeler
Bar No. 012998
1919 Pennsylvania Avenue. NW
Suite 200
Washington, DC 20006
(202) 466-4110
(202) 466-2693 (fax)

**Attorney for Plaintiffs**

McCARTHY WILSON

Thomas Patrick Ryan / L LHC
Thomas Patrick Ryan
Bar No. 01253
100 S. Washington St.
Rockville, MD 20850
(301) 762-7770
(301) 762-0374 (fax)

**Attorney for Plaintiffs**

Harry S. Johnson / by LHL
Harry S. Johnson
Whiteford, Taylor & Preston. LLP
Seven Saint Paul Street
Baltimore, Maryland 21202
(410) 347-8700

**Attorney for Defendant**

**Dated:  10/18/2002**

Joseph C. Kearfott / by LHL
Joseph C. Kearfott
Brian J. Schneider
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
(804) 788-8200

**Attorneys for Defendant**

APPROVED 10/24/02

18

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**


SHARI and MARK CHASE                    :

              **Plaintiffs**    :

        vs.                      : **Civil Action WMN-01-3169**

THE SCOTTS COMPANY                      :

              **Defendant**    :

## PLAINTIFFS' PROPOSED EXHIBIT LIST

1.    DataNet proposal to McClaren Toplis, 04/14/99.

2.    DataNet report, 05/19/99.

3.    Figure 1, Data Net report (blowup).

4.    Table 1, Analytical Results, DataNet Report.

5.    ATEL Certificates of Analysis.

6.    Analytical Consulting Technologies Report to Travelers Loss Prevention & Engineering, 12/23/98.

7.    WSSC water test report, 11/30/98.

8.    Brujos Scientific report, 01/05/99.

9.    Bell Environmental report, 06/11/99.

10.   Ehlenberger sketch, deposition exhibit 1.

11.   Ehlenberger sketch, deposition exhibit 2.

12.   Microcheck testing, orange juice sample, 09/16/98.

-1-

13.  Maryland DHMH - reports of orange juice testing.

14.  P.G. Health Department test results, household items.

15.  P.G. Health Department, soil test results.

16.  NMS Report, Shari Chase hair, date received: 12/03/98.

17.  NMS Report, Shari Chase hair, date received: 01/25/99.

18.  NMS Report, Shari Chase hair, date received: 04/09/99.

19.  American Medical Labs Report, Shari Chase hair, collected 12/28/98.

20.  American Medical Labs Report, Shari Chase hair, collected 01/12/99.

21.  Quest Diagnostics Report, Shari Chase hair, 03/30/99.

22.  Quest Diagnostics Report, Shari Chase 24-hour urine test, received:  11/06/98.

23.  Quest Diagnostics Report, Shari Chase, random urine, received:  11/12/98.

24.  Quest Diagnostics Report, Shari Chase, 24-hour urine, received:  11/18/98.

25.  American Medical Labs Report, Shari Chase random urine, received:  12/07/98.

26.  American Medical Labs Report, Shari Chase random urine, received:  12/08/98.

27.  American Medical Labs Report, Shari Chase random urine, received:  12/09/98.

28. American Medical Labs Report, Shari Chase 24-hour urine, received: 12/10/98.

29. American Medical Labs Report, Shari Chase random urine, received: 12/12/98.

30. American Medical Labs Report, Shari Chase 24-hour urine, received: 12/15/98.

31. American Medical Labs Report, Shari Chase random urine, received: 12/18/98.

32. American Medical Labs Report, Shari Chase 24-hour urine, received: 12/21/98.

33. American Medical Labs Report, Shari Chase random urine, received: 12/28/98.

34. American Medical Labs Report, Shari Chase random urine, received: 12/29/98.

35. University of Maryland Pathology, Shari Chase random urine, received: 01/11/99.

36. American Medical Labs, Shari Chase random urine, received: 02/09/99.

37. American Medical Labs, Shari Chase random urine, received: 03/26/99.

38. Quest Diagnostic Report, Shari Chase random urine, received: 05/04/99.

39. Quest Diagnostic Report, Shari Chase random urine, received: 11/00

40. Quest Diagnostics Report, Shari Chase random urine, received: 02/27/01.

41. Great Smokies Lab, Shari Chase random urine, received: 12/23/01.

42.    National Medical Services, Mark Chase hair,
       received:  12/03/98.

43.    American Medical Labs, Mark Chase hair,
       received:  12/30/98.

44.    LabCorp - A.S. Exposure Profile, Mark Chase
       received:  12/08/98.

45.    American Medical Labs Report, Mark Chase, random
       urine, received:  12/07/98.

46.    American Medical Labs Report, Mark Chase, random
       urine, received:  12/08/98.

47.    American Medical Labs Report, Mark Chase, random
       urine, received:  12/09/98.

48.    American Medical Labs Report, Mark Chase, 24-hour
       urine, received:  12/10/98.

49.    American Medical Labs Report, Mark Chase, random
       urine, received:  12/11/98.

50.    American Medical Labs Report, Mark Chase, 24-hour
       urine, received:  12/15/98.

51.    American Medical Labs Report, Mark Chase, 24-hour
       urine, received:  12/21/98.

52.    University of Maryland Pathology, Mark Chase, random
       urine, received:  12/21/98.

53.    American Medical Labs Report, Mark Chase,
       collected:  12/28/98.

54.    American Medical Labs Report, Mark Chase urine,
       collected:  01/11/99.

55.    NMS Report, Alexander Chase hair,
       received: 12/03/98.

56.    American Medical Labs Report, Alexander Chase,
       random urine, received:  12/07/98.

57.    American Medical Labs Report, Alexander Chase,
       random urine, received:  12/08/98.

58.    American Medical labs Report, Alexander Chase,
       random urine, received:  12/09/98.

59.    American Medical Labs Report, Alexander Chase,
       random urine, received:  12/10/98.

60.    American Medical Labs Report, Alexander Chase,
       random urine, received:  03/25/99.

61.    NMS Report, Brent Chase hair, received:  12/03/98.

62.    American Medical Labs Report, Brent Chase random
       urine, received:  12/07/98.

63.    American Medical Labs Report, Brent Chase random
       urine, received:  12/08/98.

64.    American Medical Labs Report, Brent Chase random
       urine, received:  12/09/98.

65.    American Medical Labs Report, Brent Chase, 24-hour
       urine,  received:  12/10/98.

66.    American Medical Labs Report, Brent Chase random
       urine,  received:  12/11/98.

67.    American Medical Labs Report, Brent Chase 24-hour
       urine,  received:  12/15/98.

68.    American Medical Labs Report, Brent Chase 24-hour
       urine, received:  12/21/98.

69.    American Medical Labs Report, Brent Chase, random
       urine, received: 01/25/99.

70.    American Medical Labs Report, Brent Chase, random
       urine, received:  02/08/99.

71.    Prince George's County, Arsenic Poisoning
       Questionnaire, Shari Chase.

72.    Prince George's County, Arsenic Poisoning
       Questionnaire, Mark Chase.

73.    Prince George's County, Arsenic Poisoning
       Questionnaire, Brent Chase.

74.    Prince George's County, Arsenic Poisoning
       Questionnaire, Alexander Chase.

75.A-? Blowups of yard photographs.

76.    Patchmaster Specifications - SCO 0317-19.

77.    MSDS Sheets - SCO 320-30.

78.    Patchmaster bag labels - SCO 7-13.

79.    Patchmaster bag sample.

80.    Scott's metals testing results -
       Micro Macro International - SCO 382-389.

81.    Scott's metals testing - ANA Lab - SCO 367-381

82.    Scott's metals testing - Thornton Lab - SCO 398-405.

83.    Scott's metals testing, Micro Macro - SCO 416-424.

84.    Scott's Customer Logs - SCO 331-342.

85.    Scott's Computer Notes - SCO 717-18.

86.    Brujos Scientific Bill.

87.    Bell Environmental Bill.

88.    Discarded items list.

89.    Marriott Hotels - bills and charges.

90.    Premier Days Inn - bills and charges.

91.    Comfort Inns - bills and charges.

92.    Bills for eating out.

93.     Spring Spectrum/PCS bills.

94.     MCI Worldcom bills.

95.     Bell Atlantic bills.

96.     Sports/exercise equipment bills.

97.     Babysitting bills.

98.     Day care bills.
99.     Service Master - cleanup bills.

100.    Arthur Black - bill.

101.    Widner-Hall Chimney Service - bill.

102.    Laurel Regional Hospital records.

103.    Johns Hopkins Hospital records.

104.    Medical bill - Lance, Gaynes, Zavadil & Argento.

105.    Medical bill - Travers, Lazarus, Levitt & Burke.

106.    Medical bill - Dimensions Imaging Services.

107.    Medical bill - Laurel Regional Hospital.

108.    Medical bill - Johns Hopkins.

109.    Medical bill - University of Maryland Medical Group.

110.    Medical bill - University of Maryland
            Pathology Associates.

111.    Medical bill - Dermatology & Cosmetic Surgery
            Associates.

112.    Medical bill - Dr. Larry Silver.

113.    Medical bill - ENTAA Care.

114.    Medical bill - PG Radio - Diagnostics.

115.    Medical bill - Maryland Oncology.

116.    Medical bill - Quest Diagnostics.

117.    Medical bill - Community Radiology.

118.    Medical bill - Ambulatory Endoscopy of Maryland.

119.    Medical bill - Feldman, Messick, et al.

120. Medical bill - Scott Nutter, DPM

121. Medical bill - Labcorp.

122.    Medical bill - Dr. Andrea Sullivan.

123.    Medical bill - Dr. Robert Maggin.

124.    Medical bill - Drs. Rosenberg & Langereis.

125.    Medical bill - Rural/Metro Mid-Atlantic.

126.    Medical bill - Advanced Radiology.

127.    Medical bill - Dr. Nespeca.

128.    Medical bill - Dr. Michael Lasser.

129.    Medical bill - RiverHill Wellness Center.

130.    Medical bill - Crossroads Medical Associates.

131.    Medical bill - American Radiology Associates.

132.    Medical bill - Central Maryland Rehab Center.

133.    Medical bill - Giant Pharmacy.

134.    Medical bill - Safeway Pharmacy.

135.    Medical bill - Orthopedic Associates of
                            of Central Maryland.

136.    Medical bill - BrainChild Nutritionals.

137.   Medical bill - Kirkman Laboratories.

138.   Medical bill - Great Smokies Diagnostic Lab.

139.   Medical bill - Neighborcare.

140.   Medical bill - AAL Reference Laboratories.

141.   Medical bill - Advanced Chiropractic of Beltsville.

142.   Medical bill - K-Mart Pharmacy.

143.   Medical bill - Executive Electrolysis.

144. Medical bill - Basil Saidedy, D.D.S.

145.   Medical bill - John Fields, D.D.S.

146.   Medical bill - Stephen Kleiman, D.D.S.

147.   Medical bill - Flag House.

148. Medical bill - Homecall Mail.

149.   Medical bill - Future Horizons.

150.   Medical bill - Mail Boxes, Etc.

151.   Medical bill - Columbia Association
            - Spa Membership.

152. Richard Albright Affidavit, c.v. and report.

153. John Adams, M.D., Affidavit, c.v. and report.

154. Nicholas Lappas, Ph.D., Affidavit, c.v. and report.

155. P.G. Health Department health Questionnaire – Shari Chase.

156. Liebeler Affidavit and attachments.

157. Any Exhibit Identified on Defendant's Exhibit List.

**Respectfully submitted,**

**THALER LIEBELER LLP**

Lars H. Liebeler
Bar No. 012998
1919 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006
(202) 466-4110
(202) 466-2693 (fax)

**Attorney for Plaintiffs**

**McCARTHY WILSON**

Thomas Patrick Ryan
Bar No. 01253
100 S. Washington St.
Rockville, MD 20850
(301) 762-7770
(301) 762-0374 (fax)

**Attorney for Plaintiffs**

October 18, 2002

**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **SHARI CHASE AND MARK CHASE,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | )   **CASE NO.: WMN-01-3169** |
| **v.** | ) |
| | ) |
| **THE SCOTTS COMPANY** | ) |
| | ) |
| **Defendant.** | ) |

## DEFENDANT'S EXHIBIT LIST

Defendant The Scotts Company, by counsel, hereby lists the following documents and things that it may offer as exhibits at the trial of this matter. Defendant reserves the right to withdraw and not to offer any documents and things contained on this list and to offer any documents and things that might be on the Plaintiffs' Proposed Exhibit List.

| | No. | Description |
|---|---|---|
| 1. | | Testing Documents of Travelers Insurance Company |
| 2. | | Testing Documents of Bell Environmental |
| 3. | | Testing Documents of Brujos Scientific |
| 4. | | 12/24/98 Letter from Art Thacher to Shari Chase (PGHD 0000007 - 8) |
| 5. | | Soil Sampling Results of Prince Georges's County Health Department (PGHD 000123 - 128) |
| 6. | | Scotts Customer Inquiry Log (SCO 000331 - 342) |
| 7. | | Urinary Arsenic Summary for Shari Chase |
| 8. | | Patchmaster Specifications (SCO 000317 - 319) |
| 9. | | One 5 Pound Bag of Patchmaster |
| 10. | | One 15 Pound Bag of Patchmaster |
| 11. | | One bottle of Bayer Advanced Lawn All-in-One Weed Killer |

| 12. | 4/25/02 Testing Documents of ANA-LAB on Greenfiber Retains (SCO 000610 - 620) |
| 13. | August 2000 Arsenic Testing for State of Washington (SCO 000357 - 376) |
| 14. | Storage Bag for Greenfiber Retains |
| 15. | University of Maryland Student Transcript for Shari Chase |
| 16. | 4/14/99 e-mail from Craig Queen to Ed Billmaier (SCO 000533) |
| 17. | 4/21/99 e-mail from Craig Queen to Ed Billmaier (SCO 000537) |
| 18. | 4/27/99 e-mail from Craig Queen to Ed Billmaier (SCO 000539) |
| 19. | 4/14/99 letter from Craig Queen to Shari Chase (SCO 000001 - 2) |
| 20. | 5/7/99 letter from Craig Queen to Shari Chase (SCO 000004) |
| 21. | PGCHD Expected and Actual Urine Arsenic Levels for Shari Chase (PGHD 000045) |
| 22. | 7/22/00 Letter from Shari Chase to Art Thacher (PGHD 000226) |
| 23. | 7/22/00 Letter from Shari Chase to Mercedes Lawrence (PGHD 000227) |
| 24. | 6/9/98 Police Record of call from Shari Chase (LCPD 000011) |
| 25. | 2/16/99 Police Record of call from Shari Chase (LCPD 000031) |
| 26. | 12/31/98 Police Interview of Shari Chase (LCPD 000084 - 146) |
| 27. | 2/1/99 Police Interview of Mark Chase (LCPD 000147 - 194) |
| 28. | 3/2/99 Letter from Dr. Larry Silver to Shari Chase (SILVR 000001) |
| 29. | NMS Report of Forensic Hair Testing on Shari Chase (NMS 000001 - 3, 7 - 28) |
| 30. | NMS Report of Forensic Hair Testing on Mark Chase (NMS 000001, 6, 29 - 42) |
| 31. | NMS Report of Forensic Hair Testing on Brent Chase (NMS 000001, 5, 43 - 56) |
| 32. | NMS Report of Forensic Hair Testing on Alex Chase (NMS 000001, 4, 57 - 70) |
| 33. | Letter from Dr. Richard Bacharach to Warren M. Ross (PL 001305) |
| 34. | Johns Hopkins Social Work Assessment Note (PL 000882) |
| 35. | Progress Note from Dr. Barry Lance(UMTS 000002 - 3) |
| 36. | Office Visit Note from Dr. James Keogh (PL 000681) |

| 37. | 10/29/01 Howard County Police Report (HCPD 000002) |
| 38. | 10/30/01 Howard County Police Report (HCPD 000003) |
| 39. | Johns Hopkins Clinic Note (JH 000012 - 15) |
| 40. | Johns Hopkins Lab Results (JH 000065) |
| 41. | Demonstrative Evidence still to be identified |

Respectfully submitted,

**THE SCOTTS COMPANY**

Harry S. Johnson (Federal Bar No.: 00618)
Whiteford, Taylor & Preston, L.L.P.
Seven Saint Paul Street
Baltimore, Maryland 21202-1626
(410) 347-8700

Joseph C. Kearfott
Brian J. Schneider
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
(804) 788-8200

**Counsel for The Scotts Company**